UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HELEN YOUNG and SARAH WYRICK,<br><br>Plaintiffs,<br><br>v.<br><br>GLICK SANTA MARIA, LLC; GENE B. GLICK COMPANY, INC.; and GENE B. GLICK FAMILY HOUSING FOUNDATION, INC.<br><br>Defendants. | No. ____________<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. Plaintiffs Helen Young and Sarah Wyrick are Deaf. Both communicate through American Sign Language (ASL).

2. Sign languages are complex, natural languages with their own grammar, vocabulary, and dialects. In ASL, the shape, placement, and movement of the hands, as well as facial expressions and body movements, all play important parts in conveying information. ASL is not a communication code that merely represents English. It is its own distinct language.[1]

3. Nearly half of deaf people experience one or more additional disabilities.[2]

[1] *See* "American Sign Language" (Oct. 29, 2021), National institute on Deafness and Other Communication Disorders, National Institute of Health, available at https://www.nidcd.nih.gov/health/american-sign-language (last visited Aug. 20, 2026).

[2] Cacciato, Kimberly, et al. "Determining Language and Inclusion for Deaf-Plus Children," *International Electronic Journal of Elementary Education,* ISSN 13.7-9298, available at https://iejee.com/index.php/IEJEE/article/view/953/481 (last visited Aug. 18, 2026).

4. Plaintiffs are or were tenants of Santa Maria Apartments (Santa Maria) in Hazelwood, Missouri.

5. Defendant Glick Santa Maria, LLC (Glick SM) has owned and operated Santa Maria Apartments since 2016. Santa Maria Apartments is a two-building apartment complex with 202 apartments.

6. Defendant Gene B. Glick Family Housing Foundation, Inc. (Glick Foundation) is affiliated with Glick SM. Defendant Glick Foundation has owned and operated Santa Maria Apartments since 2016. Glick Foundation provides affordable apartment homes to more than 14,000 residents in 56 communities across 12 states.

7. Glick SM and/or Glick Foundation receive federal subsidies for the apartments at Santa Maria through the Section 8 project-based rental assistance program established by the United States Housing Act of 1937, 42 U.S.C. § 1437f. The Section 8 program subsidizes private owners so that households with low incomes[3] have access to rental housing. Defendants' selection plan[4] makes the apartments at Santa Maria available only to people who are 62 or older and people with disabilities.

8. Defendants Glick SM and/or Glick Foundation engaged Defendant Gene B. Glick Company, Inc. (GBG) to provide property management services at Santa Maria Apartments. GBG manages over 20,000 units in 13 states.

---

[3] Section 8 tenants must have incomes lower than 80% of the area median income (AMI), 42 U.S.C. § 1437a(b)(2), and often are below 50% of AMI, 42 U.S.C. § 1437n(c)(3). In 2026, the 50% AMI income limit for a single person in the St. Louis metro area was $39,750. *See* FY 2026 Income Limits Summary, HUD's Office of Policy Dev. & Research at https://www.huduser.gov/datasets/il/il2026/summary?reporttype=county&year=2026&counties=2918999999&states=29&q=St.%20Louis%20County,%20MO (last visited July 23, 2026).

[4] In order to assist households with the greatest need for housing in a locality, the U.S. Department of Housing and Urban Development (HUD) permits owners subsidized through the Section 8 program to include selection preferences subject to HUD's approval. 24 C.F.R. § 5.655.

9. This action challenges Defendants' failures to provide accommodations, specifically American Sign Language (ASL) interpretation services, to Plaintiffs, and their acts of disability discrimination that created a hostile housing environment for Plaintiffs. Defendants' failures and actions harmed Plaintiffs, continue to harm Ms. Young, and violate the Fair Housing Act, 42 U.S.C. § 3604; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); and Missouri law.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for jurisdiction in the United States district courts over civil actions arising under the Constitution, laws, or treaties of the United States; and has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367.

11. This is an action for declaratory and injunctive relief to enforce Plaintiffs' rights under the Fair Housing Act (FHA), 42 U.S.C. § 3601, et seq.; Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, et seq.; and Missouri common law. Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2022, and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure. Plaintiffs also seek damages as authorized by the FHA, 42 U.S.C. § 3613(c)(1); Section 504, 29 U.S.C. § 794a(a)(2); and Missouri law.

12. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred in St. Louis County, Missouri, which is within the Eastern District of Missouri.

## THE PARTIES

13. Plaintiff Helen Young resides at Santa Maria Apartments in Hazelwood, St. Louis County, Missouri. She is a person with disabilities, including deafness.

14. Plaintiff Sarah Wyrick formerly resided at the Santa Maria Apartments in Hazelwood, St. Louis County, Missouri. She is a person with disabilities, including deafness.

15. Defendant Glick Santa Maria, LLC (Glick SM) is a limited liability company formed under the laws of Indiana and headquartered in Indianapolis, Indiana. It is registered with the Missouri Secretary of State and is authorized to transact business in this state as a foreign LLC.

16. Defendant Gene B. Glick Company, Inc. (GBG) is a for profit corporation formed under the laws of Indiana and headquartered in Indianapolis, Indiana. It is registered with the Missouri Secretary of State and is authorized to transact business in this state as a foreign for-profit corporation.

17. Defendant Gene B. Glick Family Housing Foundation, Inc. (Glick Foundation) is a nonprofit corporation formed under the laws of Indiana and headquartered in Indianapolis, Indiana. It is registered with the Missouri Secretary of State and is authorized to transact business in this state as a foreign nonprofit corporation.

## STATEMENT OF FACTS

**Santa Maria Apartments**

18. Defendants Glick SM and Glick Foundation own and operate Santa Maria Apartments in Hazelwood, St. Louis County, Missouri.

19. Defendants Glick SM and Glick Foundation hired or otherwise authorized Defendant GBG to provide property management services at Santa Maria Apartments.

20. Defendants Glick SM and Glick Foundation have consented to GBG's action on their behalf with regard to the management of Santa Maria Apartments.

21. Defendant GBG is subject to the control of Defendants Glick SM and Glick Foundation.

22. Defendants Glick SM and Glick Foundation gave Defendant GBG actual and apparent authority to act in their stead with regard to property management and tenant services at Santa Maria Apartments.

23. Defendants Glick SM, GBG, and Glick Foundation share the same business headquarters address in Indianapolis, Indiana. There is overlap in their officers and directors. The same individual serves as the president of each organization. Another individual serves as the secretary of each organization. The three Defendant entities each bear the Glick family name. They are distinct but related business entities.

24. Santa Maria Apartments is a two-building apartment complex with 202 studio and one-bedroom units.

25. Santa Maria Apartments is an affordable housing community.

26. Defendants offer the units at Santa Maria Apartments to people with disabilities or who are 62 years or older.

27. Defendants operate Santa Maria Apartments as part of the U.S. Department of Housing and Urban Development's (HUD's) project-based section 8 program.

28. Section 8 rental assistance serves households with low incomes.

29. Defendants Glick SM and/or Glick Foundation have a housing assistance payments (HAP) contract with HUD, which began in 2015 and runs for 20 years to 2035.

30. The Section 8 subsidy contract numbers for the contracts between HUD and Glick SM and/or Glick Foundation for the Santa Maria Apartments are MO36-0003-003 and MO36-0005-003. The FHA project number is 085-11151.

31. The current contract is a renewal pursuant to Section 524(a) of the Multifamily Assisted Housing Reform and Affordability Act of 1997.

32. Defendants receive federal funds in the form of assistance payments from HUD for the operation of Santa Maria Apartments.

33. Tenants of Santa Maria Apartments pay 30% of their income (after certain deductions are taken out) for rent. A monthly federal subsidy payment to Defendants covers the difference between the tenant contribution and the approved contract rent for each unit.

34. Tenants of Santa Maria Apartments must recertify their eligibility annually. This annual recertification process includes, but is not limited to, a determination of the tenant's countable income and a calculation of the rental payment the tenant will owe in the coming year.

35. Defendant GBG employs the staff who work on site at Santa Maria Apartments.

36. This on-site staff at Santa Maria Apartments includes a property manager, an assistant property manager, a service coordinator, a maintenance supervisor, and a maintenance technician.

37. All the acts of the on-site Santa Maria staff alleged in this action were taken under GBG's authority and direction.

38. All the acts of the on-site Santa Maria staff alleged in this action were acts within the course and scope of their employment by GBG.

39. All the acts of the on-site Santa Maria staff alleged in this action were done to further the business and interests of GBG.

40. All the acts of the on-site Santa Maria staff alleged in this action naturally arose from their performance of their assigned duties.

41. As part of their job duties, the on-site staff, specifically the property manager and assistant property manager, are responsible for conducting necessary tenant meetings, including the annual eligibility and lease recertification meetings.

42. The service coordinator has an "integral" role on staff at the Santa Maria Apartments.[5] They are required to be "proactive in supporting resident needs." Service coordinators should "assist with housing stability and support with removing barriers that can jeopardize tenancy." Service coordinators must "work closely with residents and their families to enhance and improve" tenants' lifestyles. In addition to this individualized support, service coordinators offer events and programs to Santa Maria tenants in order to "encourage socialization and a sense of belonging."

43. In 2017, Defendant GBG provided ASL interpretation during monthly town hall tenant meetings at Santa Maria Apartments. However, Defendant GBG did not provide ASL interpretation at the social events and programs at Santa Maria.

44. Plaintiffs requested ASL interpretation services at these other tenant events, which included for example social gatherings for bingo and programs about healthy lifestyles.

---

[5] "Resident Success" Santa Maria Apartments' website at https://www.santamariaapts.com/residentsuccess (last visited Aug. 20, 2026); *see also* "Santa Maria" at Defendant Gene B. Glick Company's website at https://genebglick.com/communities?location=&query=&type=&name=santa-maria&layout=list&page=1 (last visited Aug. 24, 2026) (noting Defendant "proudly provides an on-site professional and caring staff including a service coordinator to help coordinate events"); "Santa Maria" at Defendant Glick Foundation's website at https://glickhousing.org/community/santa-maria/ (last visited Aug. 24, 2026) (mentioning service coordinator and "newly remodeled community activity rooms").

45. GBG's on-site staff informed Plaintiffs that GBG would not provide interpretation at these social events and programs.

46. At some point in 2017 or shortly thereafter, Defendant GBG ceased providing ASL interpretation at the town hall meetings.

47. Plaintiffs each asked on-site staff to resume providing ASL interpretation at the town hall meetings.

48. Instead, Defendant GBG ceased holding the town hall meetings.

49. During the early stages of the COVID pandemic, all community events at Santa Maria Apartments ceased.

50. In or around 2022, the town hall meetings and property-wide events and programs resumed.

51. Since 2022, Defendant GBG has hosted and continues to host multiple tenant events every month.

52. Over the last five years, Defendants have failed or refused to provide ASL interpretation services to Plaintiffs at these property-wide events.

53. Plaintiffs requested ASL interpretation services on multiple occasions.

54. Defendant GBG approved these requests and yet failed to provide ASL interpretation services.

55. Defendants have also failed and refused to provide ASL interpretation services during meetings between GBG staff and the Plaintiffs during their recertification appointments or other individual meetings.

**Plaintiff Helen Young**

56. Plaintiff Helen Young is a person with a disability, specifically deafness, which substantially limits one or more major life activities.

57. In order to communicate effectively with hearing people, Ms. Young requires ASL interpretation services.

58. On or about December 28, 2016, Ms. Young began residing at Santa Maria Apartments in Hazelwood, Missouri.

59. Ms. Young was 44 years old when she began residing at Santa Maria Apartments.

60. Defendants knew that Ms. Young was disabled and that she was Deaf when Defendants approved her application for tenancy at Santa Maria Apartments.

61. In February 2024, Ms. Young submitted a request for ASL interpretation at resident meetings.

62. That same month, she or her case worker on her behalf provided on-site staff with a list of agencies that provide ASL interpretation services.

63. In March 2024, Defendant GBG approved Ms. Young's request for ASL interpretation services.

64. For more than two years after this approval, Defendants refused and failed to actually provide Ms. Young with ASL interpretation services.

65. In March 2025, Defendants changed the trash policy at Santa Maria Apartments. Under this new policy, the "trash rooms" where residents left trash to be taken out were closed and residents were provided trash cans and instructed when and how to place trash in them outside their apartment doors for collection on designated days.

66. Shortly afterward, Ms. Young met with Santa Maria staff regarding the change in trash policy. No interpretation services were provided during this meeting.

67. Ms. Young was overwhelmed and confused due to the lack of interpretation services.

68. In April 2025, Defendant GBG hosted two property-wide tenant meetings at Santa Maria Apartments to discuss the new trash policy.

69. Ms. Young tried to attend one of the meetings, but Defendants failed to provide ASL interpretation at this meeting.

70. In 2025, Ms. Young made more than one request for ASL interpretation services to be provided at her upcoming lease recertification meeting, which was to be scheduled for the spring or summer of 2025.

71. Defendant GBG denied or refused to provide interpretation services at this meeting that occurred in or around late May 2025.

72. Ms. Young was overwhelmed and confused during and after the meeting due to the lack of interpretation services.

73. In the summer of 2025, Defendant GBG took deductions from Ms. Young's bank account in amounts that were greater than the rental payments she was expecting after the May 2025 recertification meeting.

74. During the summer of 2025, Ms. Young requested ASL interpretation services so that she could discuss these inconsistent--and apparently erroneous or wrongful—deductions with Defendant GBG's staff.

75. Defendants failed or refused to provide Ms. Young with the requested ASL interpretation services.

76. Instead, Defendant GBG's staff arranged a meeting with Ms. Young without any interpretation services. Ms. Young was confused and distressed about the rent deductions and the amount she owed.

77. In August 2025, Defendant GBG hosted several events for tenants at Santa Maria Apartments, including a book bag giveaway, a class on maintenance requests, and a donut celebration for National Senior Citizens Day.

78. Ms. Young called[6] the Santa Maria Apartments office and left a message requesting ASL interpretation services be provided at the class about maintenance requests. Defendant GBG failed or refused to provide interpretation services at this event.

79. In August 2025, Defendant GBG's staff contacted Ms. Young by telephone to schedule another meeting regarding the rent deduction issues. Ms. Young asked if an ASL interpreter would be present at that meeting. The telephone video relay interpreter told Ms. Young that the staff member had hung up.

80. This disconnection and Defendants' refusal to discuss, much less provide, interpretation services, caused Ms. Young great distress.

81. Ms. Young's distress was so great she required medical care.

82. In February 2026, Ms. Young met with staff at Santa Maria Apartments. Defendants did not provide interpretation services during this meeting.

[6] Plaintiffs both use video relay services, which allow them to communicate through standard telephones. The video relay service connects Plaintiffs via a smartphone or webcam to an ASL interpreter who translates their conversation into spoken language, allowing Plaintiffs to communicate by phone with hearing persons. *Cf.* Consumer Guide: Video Relay Services (Federal Comm. Comm'n July 18, 2022) *available at* https://www.fcc.gov/consumers/guides/video-relay-services (last visited July 22, 2016).

83. In March 2026, Ms. Young requested ASL interpretation services for scheduled meetings with Defendant GBG's staff. Santa Maria Apartment staff required Ms. Young to submit a formal 504 request for an ASL interpreter at her recertification meeting.

84. In April 2026, Ms. Young submitted the 504 request form, which included Ms. Young's doctor's name and contact information, and Ms. Young's agreement to allow Defendants to communicate with her doctor. On the form, Ms. Young requested a qualified ASL interpreter, noting that she requires ASL interpretation because she cannot understand spoken or written English without support and said that the requested accommodation was especially important during rent recertification meetings as well as property-wide meetings, workshops, and events. Defendant GBG approved the request in the same month.

85. Later in 2026 and after Plaintiffs' counsel sent a demand letter to Defendant, Defendants began sporadically and inconsistently providing interpretation services to Ms. Young.

86. In May 2026, Defendants provided an ASL interpreter at Ms. Young's lease recertification meeting. During this meeting, the ASL interpreter informed Defendant GBG's staff of interpretation best practices, including that the hearing person should look at and communicate directly with the deaf person rather than looking at and speaking to the interpreter. Defendant GBG's property manager stated she would look wherever she felt was appropriate. The ASL interpreter also informed Defendant GBG's staff that only one person should speak at a time to allow for effective communication. Nonetheless, Defendant GBG's staff member spoke aloud more than once while Ms. Young was speaking via ASL.

87. Ms. Young felt distressed, harassed, and disrespected due to her treatment by Defendant GBG's staff at this meeting.

88. Ms. Young requested ASL interpretation at a tenant activity scheduled for early June.

89. On or about June 8, 2026, Defendants provided a qualified ASL interpreter for one hour during a tenant bingo activity on the property. Ms. Young attended the event for the time the interpreter was present. However, the event lasted longer than an hour. Ms. Young was forced to leave the event early because she could not participate without the interpreter. Other tenants were able to participate in the event for its entire duration.

90. Ms. Young requested ASL interpretation be provided at two tenant events in July 2026.

91. On or about July 9, 2026, Defendants provided an ASL interpreter at an educational program for tenants. More than once, Defendant GBG's staff walked between Ms. Young and the ASL interpreter, impeding effective interpretation and hindering Ms. Young's ability to fully participate in the event.

92. On or about July 20, 2026, Ms. Young attended the second event, a bingo game, but no interpreter was present. Defendant GBG's on-site staff offered no other means of communication and made no other effort to include Ms. Young in the activity. She left when she realized she would not be allowed to participate.

93. Defendants' multiple failures to provide a reasonable accommodation, specifically ASL interpretation services, have caused Ms. Young distress, caused her to miss work and lose wages, required her to seek medical treatment, and caused her other actual harm.

94. The lack of interpretation services prevented Ms. Young from having an opportunity to enjoy the premises equal to that of her hearing neighbors.

95. The lack of interpretation services excludes and isolates Ms. Young.

96. Defendants' failure to provide ASL interpretation and treatment of Ms. Young created a hostile housing environment on the basis of her disability.

**Plaintiff Sarah Wyrick**

97. Plaintiff Sarah Wyrick is a person with a disability, specifically deafness, which substantially limits one or more major life activities.

98. In order to communicate effectively with hearing people, Ms. Wyrick requires ASL interpretation services.

99. Ms. Wyrick resided at Santa Maria Apartments from on or about February 2017 through on or about July 2026.

100. Ms. Wyrick was 46 when she first became a tenant at Santa Maria Apartments.

101. Defendants knew that Ms. Wyrick was disabled and that she was Deaf when Defendants approved her application for tenancy at Santa Maria Apartments.

102. Ms. Wyrick wanted to have an equal opportunity to participate in social events and programs but was unable to do so because Defendants failed and refused to provide ASL interpretation services for her.

103. In February 2025, Ms. Wyrick wanted to attend the Black History Month event. She did so. The lack of a certified ASL interpreter made Ms. Wyrick unable to enjoy the event in the same manner as other tenants.

104. Prior to September 2025, Defendant GBG's staff assisted Ms. Wyrick to complete her annual recertification paperwork. Their assistance gave Ms. Wyrick comfort and confidence that the paperwork was correctly done.

105. At some point prior to September 2025, Defendant GBG's staff informed Ms. Wyrick they could or would no longer assist her to complete the recertification paperwork.

106. In September 2025, Ms. Wyrick received recertification paperwork from Defendant GBG. She went to the Santa Maria Apartments leasing office. She asked the property manager and assistant property manager to provide an ASL interpreter during her recertification meeting.

107. Defendant GBG required Ms. Wyrick to complete and submit a 504 form for accommodation requests. She did so.

108. At the same time, Ms. Wyrick and her Independent Living Specialist made clear to Defendant GBG that Ms. Wyrick specifically requested the presence of an ASL interpreter during her recertification meeting that was due to occur in or around October 2025.

109. On October 24, 2025, Defendant GBG approved Ms. Wyrick's request for an ASL interpreter.

110. Defendants never provided Ms. Wyrick with a recertification appointment, nor did they schedule ASL interpretation services for Ms. Wyrick's recertification meeting.

111. In December 2025, Ms. Wyrick wanted to attend the Christmas party. She did not attend because the lack of interpretation services would hinder her ability to engage with others and enjoy the social event. Her inability to attend made her feel isolated and depressed. She wished she could connect with her neighbors like she saw others at Santa Maria doing.

112. Also in December 2025, Ms. Wyrick encountered Defendant GBG's assistant property manager as Ms. Wyrick was going to her mailbox. The assistant manager brought Ms. Wyrick to the leasing office. No ASL interpreter was present. The assistant property manager nonetheless required Ms. Wyrick to sign a lease and recertification forms.

113. The assistant property manager also charged Ms. Wyrick fees. Ms. Wyrick did not understand why she had to make those payments.

114. Ms. Wyrick signed the forms and paid the fees under duress and due to fears that her refusal to do so could result in the loss of her housing and a return to homelessness.

115. Ms. Wyrick experienced extreme distress from Defendant GBG's failure and refusal to provide her the accommodation of ASL interpretation services.

116. Ms. Wyrick's distress was so extreme she required medical care.

117. The lack of interpretation services prevented Ms. Wyrick from having an opportunity to enjoy the Santa Maria Apartment premises equal to that of her hearing neighbors.

118. The lack of interpretation services excluded and isolated Ms. Wyrick.

119. Ms. Wyrick suffered actual harm from Defendant's failure and refusal to provide ASL interpretation services.

120. Defendants' failure to provide ASL interpretation and treatment of Ms. Wyrick created a hostile housing environment on the basis of her disability.

## STATEMENT OF CLAIMS

### Count One: Violation of the Fair Housing Act, 42 U.S.C. § 3604

121. Plaintiffs are each persons with a disability, formerly and sometimes called a "handicap," as defined by 42 U.S.C. § 3602(h).[7]

122. Plaintiffs are deaf and each has been deaf since she was born.

123. Plaintiffs' disabilities are obvious.

124. Defendant GBG knew that each of the Plaintiffs is deaf and had this knowledge at or before the beginning of their tenancies at Santa Maria Apartments.

[7] The FHA uses the term "handicap" instead of "disability;" these terms have the same legal meaning. *See Gragdon v. Abbot*, 524 US 624, 631 (1998) (noting definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1998").

125. Defendants Glick SM and Glick Foundation gave GBG actual authority to provide property management services, including the responsibility to determine whether or not an accommodation requested by a tenant is reasonable and when and how to provide reasonable accommodations as required by law.

126. Defendants Glick SM and Glick Foundation gave GBG apparent authority to provide property management services, including the responsibility to determine whether or not an accommodation requested by a tenant is reasonable and when and how to provide reasonable accommodations as required.

127. Santa Maria Apartments is a dwelling as defined by 42 U.S.C. § 3602(b).

128. Defendants are housing providers as defined by 42 U.S.C. § 3603(c).

129. Due to their disabilities, Plaintiffs each required an accommodation, specifically American Sign Language interpretation.

130. Plaintiffs each requested this accommodation from Defendant GBG.

131. Plaintiffs each requested the accommodation from Defendant GBG on more than one occasion.

132. The accommodations that Plaintiffs requested and required were reasonable.

133. The accommodations that Plaintiffs requested and required were necessary to afford them an equal opportunity to use and enjoy their dwelling units and the public and common use areas at Santa Maria Apartments.

134. Defendants Glick SM and Glick Foundation as the owners of Santa Maria Apartments have a non-delegable duty to ensure there is no discrimination in the terms, conditions, or privileges of renting a dwelling or the provision of services or facilities in connection with Santa Maria Apartments.

135. Defendant GBG refused and failed to provide the required accommodations.

136. Defendants each and all discriminated against each Plaintiff by treating her less favorably than others by reason of her disability in violation of 42 U.S.C. § 3604(f).

137. Defendants each and all discriminated against each Plaintiff in the terms, conditions, or privileges of renting a dwelling or in the provision of services or facilities in connection with a dwelling because of her disability in violation of 42 U.S.C. § 3604(f).

138. Defendants each and all discriminated against each Plaintiff by refusing to make reasonable accommodations in rules, policies, practices, or services when such accommodations were necessary to afford each Plaintiff an equal opportunity to enjoy Santa Maria Apartments in violation of 42 U.S.C. § 3604(f).

139. Plaintiffs were each harmed by Defendants' refusal and failure to provide the required accommodation.

140. Plaintiffs were each harmed by Defendants' discrimination.

141. Ms. Young is at risk of ongoing and future harm if Defendants' failures to provide required accommodations and discrimination are allowed to continue.

**Count Two: Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**

142. Plaintiffs are each individuals with a disability as defined by 29 U.S.C. § 794.

143. Defendants are entities whose principal program or activity is the provision of housing as defined by 29 U.S.C. § 794.

144. Defendants Glick SM and Glick Foundation own Santa Maria Apartments, which is a program or activity receiving federal financial assistance as defined by 29 U.S.C. § 794 and 24 C.F.R. § 8.3.

145. Defendant GBG manages Santa Maria Apartments, Santa Maria Apartments, which is a program or activity receiving federal financial assistance as defined by 29 U.S.C. § 794 and 24 C.F.R. § 8.3.

146. Defendants Glick SM and Glick Foundation gave Defendant GBG both actual and apparent authority to provide property management services, including the responsibility to determine whether or not an accommodation requested by a tenant is reasonable and when and how to provide reasonable accommodations as required.

147. Plaintiffs were each otherwise qualified to participate in and receive the benefits of the services and programs offered to Defendants' tenants at Santa Maria Apartments.

148. Defendants excluded Plaintiffs from participation and denied them the benefits of Santa Maria Apartments' programs and services on the basis of their disabilities in violation of 29 U.S.C. § 794(a) and 24 C.F.R. § 8.4.

149. Defendants subjected Plaintiffs to discrimination solely by reason of their disability in violation of 29 U.S.C. § 794(a).

150. Defendants' discriminatory behavior was intentional or deliberately indifferent to Plaintiffs' right as secured by Section 504 of the Rehabilitation Act.

151. Plaintiffs were harmed by Defendants' exclusion, denial, and/or discrimination.

152. Ms. Young is at risk of future harm if this exclusion, denial, or discrimination is allowed to continue.

**Count Three: Intentional Infliction of Emotional Distress**

153. Defendants Glick SM and Glick Foundation own Santa Maria Apartments.

154. Defendants Glick SM and Glick Foundation gave Defendant GBG both actual and apparent authority to provide property management services, including the responsibility to

determine whether or not an accommodation requested by a tenant is reasonable and when and how to provide reasonable accommodations as required.

155. Defendant GBG managers Santa Maria Apartments and employs on-site staff to perform property management services.

156. Defendants have known since on or before the inception of Plaintiffs' tenancies at Santa Maria that each of the Plaintiffs is deaf.

157. Defendants have known since the inception of their tenancies at Santa Maria that each Plaintiff requires ASL interpretation services in order to communicate effectively with hearing people.

158. Defendants knew that Ms. Wyrick had been homeless just prior to becoming a tenant at Santa Maria Apartments.

159. Defendants failed and refused to provide ASL interpretation services to Plaintiffs during meetings with Santa Maria Apartment staff and during tenant events at Santa Maria Apartments.

160. Defendants created a hostile living environment for each Plaintiff by excluding her from events open to all tenants, by denying her equal access to the benefits of living at Santa Maria Apartments, and by discriminating against her on the basis of her disability.

161. Defendants' treatment of Plaintiffs caused each of them to feel isolated, excluded, depressed, anxious, and distressed.

162. Defendants' conduct toward Plaintiffs was extreme and outrageous.

163. Defendants' conduct was so extreme that it was beyond the bounds of decency.

164. Defendants' conduct must be regarded as atrocious and intolerable in a civilized community.

165. Defendants acted intentionally or in a reckless manner with disregard for the risk of severe distress Plaintiffs would experience.

166. Defendants' acts caused Plaintiffs emotional distress so severe that no reasonable person could be expected to endure it.

## **REQUEST FOR RELIEF**

Accordingly, Plaintiffs respectfully ask this Court to enter judgment in their favor as follows:

A. Assume jurisdiction of this matter;

B. Declare Defendants' failure to provide Plaintiffs with required accommodations, specifically American Sign Language interpretation services, is unlawful;

C. Enjoin Defendants from failing and refusing to provide Ms. Young with required accommodations, specifically ASL interpretation services, as required by law;

D. Award Plaintiffs actual, compensatory, and punitive damages;

E. Award Plaintiffs litigation costs and reasonable attorney's fees; and

F. Grant such other further relief as the Court may deem just and proper.

Respectfully submitted,

By*/s/ Elizabeth Hope Fink*
Elizabeth Hope Fink, MO Bar #72800
Amanda J. Schneider, MO Bar #59263
Lisa J. D'Souza, MO Bar #65515
Legal Services of Eastern Missouri
701 Market Street
Suite 1100
St. Louis, MO 63101
(314) 256-8793 direct
(314) 451-1187 fax
ehfink@lsem.org
ajschneider@lsem.org
ljdsouza@lsem.org

ATTORNEYS FOR PLAINTIFFS